# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD J. GOODE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 CV 3967 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| AMERICAN AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Goode was discharged by Defendant American Airlines Inc. ("American") on January 3, 2006. On July 12, 2008, Plaintiff filed a complaint in which he alleged that his dismissal constituted retaliatory discharge for exercising his rights under the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/4(h). After the close of discovery, American filed a motion for summary judgment [25] pursuant to Rule 56 of the Federal Rules of Civil Procedure. On September 20, 2010, the Court granted Defendant's motion for summary judgment. On October 4, 2010, Plaintiff timely filed a motion for reconsideration [70] of the Court's September 20, 2010 order. For the reasons stated below, Plaintiff's motion [70] is respectfully denied.

### I. Legal Standard on Motion for Reconsideration

A court may alter or amend a judgment when the movant "clearly establish[es]" that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). In regard to the "manifest error" prong, the Seventh Circuit has elaborated that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial

1

issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

While a motion for reconsideration allows a movant to bring to a court's attention a manifest error of law, it "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

## II.    Analysis[1]

Plaintiff argues that the Court erred in two respects: (1) the Court significantly misapprehended certain critical facts; and (2) the Court did not defer to Illinois law. See Plaintiff's Mot. for Reconsideration ("Motion") at 1. Specifically, Plaintiff contends that: (1) reasonable minds could differ as to whether he was honest during his 29F hearing (Motion at 2-3); (2) American "had it out for him" because of his poor disciplinary history (Motion at 3); (3) the Court misconstrued the holdings of other recent cases involving American (Motion at 4); and (4) the Court did not properly apply Illinois state court holdings (Motion at 4-5). As explained in detail below, Plaintiff previously set forth the bulk of these arguments in his response to Defendant's motion for summary judgment, and the Court addressed the majority of Plaintiff's arguments in its summary judgment opinion.

---

[1] The facts are chronicled in detail in the Court's Memorandum Opinion and Order of September 20, 2010.

Plaintiff's primary argument is that the Court erred in granting summary judgment to American because it should have permitted the fact-finder to determine whether Plaintiff was dishonest in his 29F hearing as well as whether American believed that he was dishonest. Plaintiff advanced this argument in his response brief (see Response at 9, 12-13), and the Court considered these facts and arguments at considerable length in its opinion (9/20/10 Opinion at 8-14, 22-27). A motion for "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments." *Chicago United Industries*, 2010 WL 3655983, at *2 (quoting *Caisse Nationale de Credit v. CBI Industries*, 90 F.3d 1264, 1270 (7th Cir. 1996)). In any case, as set forth in the summary judgment opinion, Plaintiff's veracity is not directly at issue in this case. A fact finder need not decide whether he was actually telling the truth during the 29F conference. Instead, the issue is whether the decision-makers legitimately believed that Plaintiff was lying during the hearing.

American Airlines' rules of conduct provide that dishonesty is grounds for immediate dismissal, and recent cases confirm that lying constitutes a valid basis for firing an employee. See *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 299-300 (7th Cir. 2010); *Buzinski v. American Airlines, Inc.*, 379 Fed. Appx. 536, 539 (7th Cir. 2010). American maintains that it terminated Plaintiff because Plaintiff lied in violation of clearly established company policy. Thus, as set forth by the Court in its summary judgment opinion, the crucial question was whether there was enough evidence for a rational jury to conclude that the American employees responsible for discharging Plaintiff did not honestly believe that he had violated American's "zero-tolerance policy" for material lies by its workers. *Casanova v. American Airlines, Inc.*, 616 F.3d 695, 697-98 (7th Cir. 2010). Even interpreted in the light most favorable to Plaintiff, the events that occurred between Plaintiff's injury and his termination do not provide a

reasonable basis for such a conclusion.  American maintains that Plaintiff was fired purely because of the misrepresentations that he made during the process of his 29F conference. Vertrees, Havens, and Procknow have stated that they thought that Plaintiff's answers during the 29F were not credible in two respects:  First, they thought that Plaintiff's statement that he was not aware of his driving restriction was inconsistent with his initial understatements of how much he had driven.  Second, they thought it incredible that Plaintiff did not initially recall driving several hours to take his fiancée to the hospital in Galesburg, taking a two-hour final exam, or whether or not he had seen his children the previous week.

Contrary to Plaintiff's assertion, the Court has not misapprehended the facts surrounding this issue.  Based on the record before the Court at summary judgment, "even considered in a light most favorable to Plaintiff, the notes from the 29F conference, taken in conjunction with the depositions of Plaintiff and the decision-makers, do not provide a basis for finding that Havens, Vertrees, and Procknow did not honestly believe that Plaintiff had lied during his 29F conference."  9/20/10 Opinion at 24.  As pointed out by Plaintiff, at the outset, American showed him the form with the doctor's restrictions (because Plaintiff claimed to have not seen it before) and asked him if he adhered to the doctor's restrictions (which included not driving), to which Plaintiff replied "[y]es I did."  The next question was "[y]ou didn't do any driving?"  Plaintiff's response was "[y]es, because I didn't see this.  The Dr. faxed it over.  I didn't look at it when the Dr. filled it out."  Even if the Court accepts Plaintiff's version of the events – that "[y]es, because I didn't see this" meant that he did do some driving – that version would be inconsistent with Plaintiff's previous statement, made after he reviewed the doctor's list of restrictions, that he adhered to the doctor's restrictions, which included not driving.  Then, the next question was to "[d]escribe what kind of driving you did."  Instead of describing the driving that he did, he

4

stated, "I really don't think that I did any." Yet, as the conference continued, Plaintiff admitted at least to driving to the grocery store, driving to pay some bills, driving to get gas, driving his fiancée to Galesburg Hospital (approximately 200 miles each way) for a medical emergency on December 10, and driving to sit for an exam on December 12 (the day before his second doctor's appointment related to the back injury). Although by the end of conference the decision-makers felt fairly confident that they had gotten the whole story out of Plaintiff, it was within the decision-makers' discretion to determine that, under a zero-tolerance policy, the initial inconsistencies were sufficient to constitute a violation of American's rules against lying, particularly when the truth came on the heels of Vertrees' probe, "Do you want to think about it some more?"

The Court concluded that Plaintiff was terminated because his continuously-changing story regarding his activities during the 29F conference led the decision-makers to believe that he was being dishonest. The Court thoroughly addressed the issue of pretext – and Plaintiff's current arguments – in its Opinion:

> In order to find pretext, a jury would have to determine that the decision-makers' conclusion – that Plaintiff had been dishonest – was unworthy of belief, and it is clear from the record evidence that, however fleetingly, Plaintiff did materially misrepresent his driving habits and other post-injury activities at his 29F conference. Had Plaintiff been forthcoming from the outset of the conference that he had been driving, this would be a different case, because even if his restrictions included "no driving," there would be a question of fact regarding the extent to which he was aware of the restrictions. Instead, Plaintiff initially maintained that he did not do any driving, when the truth – as the surveillance revealed and as Plaintiff himself ultimately acknowledged later in the hearing – was that he drove several times during the time between his first and second doctor's appointments, including two lengthy excursions that would have been hard to forget in the short period of time between the first week of his injury and the 29F conference. In these circumstances, Defendant had ample basis to conclude that Plaintiff was not being forthright about his activities since his injury.
>
> Once again, the Court points out that whether Plaintiff in fact was lying, obfuscating, or dissembling is not at issue in this case, nor is there any warrant for

5

the Court to consider the propriety of Defendant's decision to terminate Plaintiff, instead of imposing some lesser form of discipline. The Seventh Circuit frequently has observed that a federal court does "not sit as a super personnel department to review an employer's business decisions." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000); see also *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir. 1992). Similarly, the court of appeals has commented that "[i]t is no business of a court in a discrimination case to decide whether an employer demands too much of its workers." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179-80 (7th Cir. 1997); see also *McCoy*, 957 F.2d at 373 (explaining that it is not a court's proper concern that an employer may be wrong about its employee's performance, or be too hard on its employee). Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie. *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). Here, Plaintiff has failed to offer evidence that the decision-makers did not honestly believe that Plaintiff was in fact being untruthful, which is the reason that they gave for terminating Plaintiff.

As the Court opined then, and reaffirms now, Plaintiff has not offered any evidence of pretext.

Plaintiff also contends that a letter by one of the decision-makers to a senior vice president that Plaintiff "had been a problem employee for a number of years who has been on Advisory steps continuously" is evidence that American had it out for Plaintiff. To the contrary, Plaintiff's history at American is what it is, and Plaintiff does not contest that he had been on "Advisory steps." Because Plaintiff's history included past problems, the decision-maker was well within his rights to mention that history in the course of the letter. What Plaintiff has failed to demonstrate is that his history of problems was the actual reason that he was fired, instead of being fired for the inconsistencies in his hearing testimony. Plaintiff's inconsistent testimony at his hearing provided a legitimate business reason for his termination, and the letter referenced by Plaintiff in his motion does not provide sufficient evidence for a rational jury to conclude that the American employees responsible for discharging Plaintiff did not honestly believe that he had violated American's "zero-tolerance policy" for material lies by its workers. *Casanova*, 616 F.3d at 697-98.

Plaintiff maintains that it is "ironic that the *Casanova* [d]ecision is cited to endorse the use of surveillance 'to test the bona fides of a workers' compensation claim' when it was undisputed that Casanova was being paid workers' compensation benefits up to and through the Trial of his case." Motion at 4. In citing *Casanova v. American Airlines, Inc.*, the Court quoted a passage from *Casanova* for the proposition that Illinois law does not prohibit employers from using surveillance to determine whether employees' claims for workers' compensation benefits are legitimate. 9/20/10 Opinion at 24 n.15. American had the right to conduct the surveillance in the course of making its determination. Whether Plaintiff's workers' compensation claim was valid is not at issue here, and thus, there is nothing for the Court to "reconsider" that would alter the finding of summary judgment in favor of American.

Plaintiff also objects to the Court's citation to *Gacek v. American Airlines, Inc.*, 614 F.3d at 299-300, finding it "ironic that the *Gacek* [d]ecision stands for the proposition that it is insufficient to prove pretext by showing that the employer's stated reasons for termination are not worthy of belief." However, the Court never cited *Gacek* for such a proposition. Rather, the Court stated that "in order to find pretext, a jury would have to determine that the decision makers' conclusion – that Plaintiff had been dishonest – was unworthy of belief, and it is clear from the record evidence that, however fleetingly, Plaintiff did materially misrepresent his driving habits and other post-injury activities at his 29F conference." Opinion at 26-27. In other words, Plaintiff gave the decision-makers a legitimate business reason to terminate his employment.

Plaintiff's final objection to the Court's opinion is that it "lack[ed] deference to Illinois law." As support for this argument, Plaintiff cites two cases – *Clark v. Owens-Brockway Glass Container, Inc.*, 697 N.E.2d 743, 746 (Ill. App. Ct. 5th Dist. 1998), and *Netzel v. United Parcel*

*Services, Inc.*, 537 N.E. 1348 (Ill. App. Ct. 1st Dist. 1989). Motion at 1. In responding to the summary judgment motion, Plaintiff devoted two-thirds of his response brief argument section and almost his entire surreply to a discussion of the *Clark* case. Plaintiff now reasserts the same argument he raised in his response – that he was terminated for availing himself of a benefit to which he was not entitled, and that this is contrary to the holding in *Clark*. As discussed above, Plaintiff cannot use the instant motion to rehash arguments already made. See *Chicago United Industries*, 2010 WL 3655983, at *2 (quoting *Caisse Nationale*, 90 F.3d at 1270). The Court considered and addressed Plaintiff's argument in relation to *Clark*, as well as two other Illinois Appellate Court decisions, and determined that they stood for the proposition that an employer may not terminate an employee on the basis of a dispute about the nature and extent of a compensable injury, but it may terminate him for unrelated reasons. Opinion at 20 (citing *Clark*, 697 N.E.2d at 746; *Grabs v. Safeway, Inc.*, 917 N.E.2d 122, 127 (Ill. App. Ct. 1st Dist. 2009); *Hollowell v. Wilder Corp.*, 743 N.E.2d 707, 712 (Ill. App. Ct. 5th Dist. 2001)). Thus, as the Court previously concluded, American is not prohibited by Illinois law from terminating Plaintiff for mendacity, even if his mendacity occurred after he sustained a compensable injury.

Although Plaintiff never cited *Netzel* in his response brief, he now maintains that *Netzel* supports that proposition that "[t]he character of AA's reason for discharging Plaintiff, whether innocent or culpable, is the ultimate fact question for the jury." In *Netzel*, the appellate court reasoned that a defendant must do more than simply state a legitimate, non-discriminatory reason for an adverse action. Here, the Court evaluated whether American's stated reason for terminating Plaintiff was pretextual and found that no rational jury could find that it was. Thus, *Netzel* does not call into question the Court's decision to grant summary judgment in favor of American.

## IV. Conclusion

For the reasons stated above, the Court denies Plaintiff's motion for reconsideration [70].

Dated:  December 14, 2010     _____
                              Robert M. Dow, Jr.
                              United States District Judge

9